UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Case No. 15-56285-tjt

**Jamara Y. McNeil-Simpson,** Chapter 7

Debtor. Hon. Thomas J. Tucker
_______________________________________/

**Daniel M. McDermott,**
**United States Trustee,** Adversary Case No. 16-4256

Plaintiff,

v.

**Jamara Y. McNeil-Simpson,**

Defendant.
_______________________________________/

## MOTION FOR SUMMARY JUDGMENT UNDER 11 U.S.C. § 727(a)(4)(A)

Daniel M. McDermott, United States Trustee, states as follows:

1. The Court has jurisdiction of this matter based on 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b) (1) and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157(b) (2) (J). This Motion is filed under to Fed. R. Civ. P. 56(a). A proposed Order, Brief and Exhibits in support are attached.

2. The Defendant is an individual residing at 1364 Dorothea, Berkley, Michigan 48072.

3. This case was commenced by the filing of a voluntary petition on November 8, 2015.

4. The U.S. Trustee filed a complaint to deny the Defendant's discharge on March 7, 2016 [Adversary Proceeding 16-4256, Doc. No. 1].

5. Under to the Court's order dated April 25, 2015, all potentially dispositive motions must be filed in this adversary proceeding no later than August 12, 2016. [Doc. No. 8]. This motion is timely.

6. The Defendant filed her Petition, Schedules, and Statement of Financial Affairs on or about November 8, 2015. All of those documents were signed by the Defendant under penalty of perjury.

7. At the § 341 Meeting of Creditors held February 4, 2016, the Defendant testified under oath that her Petition, corresponding Schedules and her Statement of Financial Affairs remained true, accurate and complete.

8. As further explained in the attached Brief and exhibits in support, the Defendant's schedules were – and even after amendments, remain – riddled with numerous material inaccuracies and omissions.

9. The Defendant knew of these inaccuracies and omissions when the Schedules and Statement of Financial Affairs were filed.

10. The Defendant made these material omissions and false statements with fraudulent intent.

11. Upon these facts, and for the reasons explained in the U.S. Trustee's attached Brief and Exhibits, summary judgment should be granted for the U.S.

Trustee, as no genuine dispute of material fact remains to be resolved and the U.S. Trustee is entitled to judgment as a matter of law.

**WHEREFORE**, the United States Trustee respectfully requests the entry of an order granting the U.S. Trustee's motion for summary judgment, and denying the Defendant's discharge under 11 U.S.C. § 727(a)(4)(A).

Respectfully submitted,

**DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9

By /s/ Sean M. Cowley
Trial Attorney
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-3432
Sean.Cowley@usdoj.gov
[P72511]

Dated: August 12, 2016

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Case No. 15-56285-tjt

**Jamara Y. McNeil-Simpson,** Chapter 7

Debtor. Hon. Thomas J. Tucker
_______________________________________/

**Daniel M. McDermott,**
**United States Trustee,** Adversary Case No. 16-4256

Plaintiff,

v.

**Jamara Y. McNeil-Simpson,**

Defendant.
_______________________________________/

**ORDER DENYING DISCHARGE**

**THIS MATTER** came before the Court upon the United States Trustee's Motion for Summary Judgment under 11 U.S.C. § 727(a)(4)(A). All parties in interest received notice of this Motion and the Court is otherwise fully advised in this matter.

**NOW, THEREFORE,**

**IT IS ORDERED** that the Defendant's discharge is **DENIED** under 11 U.S.C. § 727(a).

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 15-56285-tjt |
| **Jamara Y. McNeil-Simpson,** | Chapter 7 |
| Debtor. | Hon. Thomas J. Tucker |

________________________________________/

**Daniel M. McDermott,**
**United States Trustee,** Adversary Case No. 16-4256

Plaintiff,

v.

**Jamara Y. McNeil-Simpson,**

Defendant.

________________________________________/

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

The United States Trustee has filed papers with the court for summary judgment seeking to deny the Defendant's discharge in the above-captioned Chapter 7 bankruptcy case.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you not have an attorney, you may wish to consult one.).

If you do not want the court to grant the relief requested, or if you want the court to consider your views on the motion, **within 14 days**, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

U.S. Bankruptcy Court
211 West Fort Street
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

You must also mail a copy to: Sean M. Cowley, Esq.
Office of the United States Trustee
211 West Fort Street, Suite 700
Detroit, MI 48226

[1] Response or answer must comply with F.R.Civ.P. 8(b), (c) and (e).

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

**DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9

By /s/ Sean M. Cowley
Trial Attorney
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-3432
Sean.Cowley@usdoj.gov
[P72511]

Dated: August 12, 2016

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 15-56285-tjt |
| **Jamara Y. McNeil-Simpson,** | Chapter 7 |
| Debtor. | Hon. Thomas J. Tucker |

_______________________________________/

**Daniel M. McDermott,**
**United States Trustee,** — Adversary Case No. 16-4256

Plaintiff,

v.

**Jamara Y. McNeil-Simpson,**

Defendant.

_______________________________________/

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT UNDER 11 U.S.C. § 727(a)(4)(A)**

## I. INTRODUCTION

Ms. McNeil filed her petition for relief under Chapter 7 of the Bankruptcy Code on November 8, 2015. A realtor with an MBA and the current or former owner/operator of several real estate businesses, Ms. McNeil's schedules and statement of financial affairs disclose that she makes roughly $2,500 per month, and has for the few years prior to her bankruptcy filing. In reality, Ms. McNeil's bank records and those of her companies show that she made far more, and that she hid over $100,00 in income from 2014 and 2015 prior to her bankruptcy filing. Ms. McNeil's documents signed under penalty of perjury also fail to disclose a

cause of action she admits is worth over $35,000, fail to disclose bank accounts that are either still open or were closed in the year prior to her filing, and misstate the amount of money she was expecting from pending deals at the time of her bankruptcy filing.

The conduct described above violates 11 U.S.C. § 727(a)(4)(A) as a matter of law, and Ms. McNeil's discharge should be denied. As no genuine disputes of material fact remain, the Court should **GRANT** the U.S. Trustee's motion for summary judgment, and **DENY** Ms. McNeil's discharge.

## II. ISSUE PRESENTED

Whether a sophisticated realtor with an MBA who concealed over $100,000 in income, bank accounts, a company, a $35,000 cause of action, and the true amount of money owed to her on pending deals prior to her filing, has raised sufficient questions of fact to survive a motion for summary judgment under 11 U.S.C. § 727(a)(4)(A).

## III. STATEMENT OF FACTS

Consistent with the requirements of Fed. R. Civ. P. 56(a), the following are the facts of this case in the light most favorable to the Defendant:

Jamara Y. McNeil-Simpson has been a realtor involved in the real estate industry for over a decade. *See* Schedule I, **Ex. 1**, p.23 (employed as a realtor for the past 11 years). She has an undergraduate degree in journalism from Michigan State University, as well as a Master's degree in public relations and an MBA.

[Oct. 22, 2015 Deposition of Defendant, **Ex. 3**, 12:25-13:10]. At times she has gone by a variety of different names, including using the last name Sanders after marrying her husband in February 2015. *Id*. at 6:10-22. She has also used the first name "Jaye" as an alias in the past. *Id*. at 7:11-17 (admitting she has used the names Jaye Simpson and Jaye Sanders). Ms. McNeil filed her bankruptcy case on November 8, 2015.

### A. NID Housing Counseling Agency, NID HCA Detroit, LLC, and Nextpoint Realty

NID Housing Counseling Agency ("NID") is a California qualified, tax-exempt, non-profit corporation with a principle place of business in Oakland, California. NID is a HUD-approved provider of counseling and education services. It worked with both Fannie Mae and Freddie Mac to offer counseling and support to homeowners who had fallen behind on mortgages owed or guaranteed by those entities to achieve loan workouts. In March of 2014, Ms. McNeil became an independent contractor for NID, responsible for the management, administration and oversight of NID's office in Detroit, Michigan. She had supervisory and management responsibilities over other NID counselors in the office. Ms. McNeil disclosed her involvement with NID, at an address on Livernois in Detroit, in answer to Question 18 on her Statement of Financial Affairs. *See* **Ex. 1**, p.33.

On June 9, 2014, Ms. McNeil created a Michigan limited liability company known as NID HCA Detroit LLC ("NID Detroit"), a name similar to that of NID

Housing Counseling Agency, the company to which she was an independent contractor. The Articles of Organization for NID Detroit were signed by Jamara McNeil-Simpson on June 9, 2014 [**Ex. 2**, p.3], and the resident agent was listed as "Jaye Simpson" – an alias Ms. McNeil admitted she used. *Id*., *see also* **Ex. 2**, 7:11-17. A "J. Simpson" filed a Certificate of Dissolution for NID Detroit on December 10, 2014, **Ex. 2**, p.5, with a signature that looks very similar to the one signed by Ms. McNeil on the original Articles of Organization. *Compare id.* at pp. 3, 5.

During the time it was an active company, NID Detroit had a bank account with Fifth Third Bank ending in #8408. *See* **Ex. 6**. Ms. McNeil's ownership interest in NID Detroit is not disclosed as a current corporate entity on Schedule B, nor is it disclosed as a historical corporate entity on Question 18 to the Statement of Financial Affairs. At least one of those disclosures is false.

Ms. McNeil was also the owner, operator, officer, director, partner, or managing executive of a real estate company known as Nextpoint Real Estate Services, LLC ("Nextpoint"), which had an address on 12 Mile Road in Berkley at the same location as NID Detroit operated. *See* **Ex. 1**, p.33. Bank accounts in the name of either Nextpoint or NID Detroit appear to have been the primary source of income for Ms. McNeil in 2014 and 2015, as further explained below.

### B. Over $100,000 in Undisclosed Income

Ms. McNeil's Schedule I discloses that she makes $2,500 monthly from her work at Nextpoint. [**Ex. 1**, p.23]. Her answer to Question 1 on her Statement of Financial Affairs discloses historical income in 2014 of "$30,000 (estimated)," and 2015 income to the date of her filing in November 2015 of $27,500. *Id.* at 28. Both of these disclosures are false, and understate Ms. McNeil's income for 2014 and 2015 by over $100,000.

NID issued Ms. McNeil a Form 1099 for tax year 2014 in the amount of $63,470.00. [*See* **Ex. 4**]. This amount is, alone, more than double the "estimated" amount Ms. McNeil discloses under penalty of perjury on her Statement of Financial Affairs. Even leaving this 1099 income aside,[1] her bank records[2] show gross income of over $81,000 *each year* for 2014 and 2014, leaving more than $100,000 in income *not disclosed* in her statements under oath.

[1] The U.S. Trustee will not include this 1099 Income in the income calculations below, in an effort to not double-count deposits into Ms. McNeil's accounts and those of her corporate entities for purposes of this summary judgment motion.

[2] Bank records for Ms. McNeil's personal accounts as well as for her business entities appear as **Exhibits 7-11** attached to this motion, and are the complete records of the accounts for the time periods disclosed save for the elimination of blank account pages or pages with no relevant information attached. In light of the voluminous nature of those bank records, the U.S. Trustee has included a summary under Fed. R. Evid. 1006, which is attached as **Exhibit 5** to the motion, and is broken down by account and by year (2014 or 2015) for ease of reference.

1. The Debtor's Personal Accounts at Talmer & Comerica Banks

From the start of 2014 through February of 2015, Ms. McNeil had a personal bank account at Talmer Bank ending in #3505, the statements are attached as **Exhibit 7**. Those records show regular deposits into the debtor's account, often in the form of transfers from one of her corporate entity's accounts. A summary of those deposits is included on page 1 of **Exhibit 5**, and discloses the following aggregate deposits for 2014 and 2015:

- Year 2014: $48,409.10 in total deposits
- Year 2015: $9,090.29 in total deposits (to 2/25/15)

After February 2015, the Debtor moved her primary banking business to Comerica Bank, and had a personal bank account there ending in #1031. The statements for that account are attached as **Exhibit 8**. As with her personal Talmer Account, the #1031 Account shows regular deposits, often in the form of transfers from one of Ms. McNeil's corporate accounts. A summary of those deposits is included on page 2 of **Exhibit 5**, and discloses $20,095.43 in total deposits between February 2015 and November 13, 2015 (the last statement before the debtor's bankruptcy filing).

2. The NID Detroit Account with Fifth Third Bank

NID Detroit had a bank account at Fifth Third Bank ending in #8408. The statements for that account are attached as **Exhibit 6**. In addition to what appear to be many legitimate business expenditures, the #8408 Account includes dozens and

dozens of charges for what can only be explained as personal expenses. A summary of those personal expenses for Ms. McNeil is included on page 3 of **Exhibit 5**, and totals $9,325.63 between July and September of 2014. Those expenses include grocery and gasoline expenditures, fast food and coffee charges, trips to a yoga studio, video rentals, museum tickets, spa treatments, as well as over $500 in charges to the Cedar Point Amusement Park and an additional $2,000 to something called "Vacation Express." *Id*. These expenditures are gross income to Ms. McNeil, even though she has apparently not apparently considered them income for tax purposes.

3. The Nextpoint Accounts with Talmer and Comerica Banks

Nextpoint had a bank account at Talmer Bank ending in #3041 from early 2014 until March 2015. The statements for that account are attached as **Exhibit 9**. In addition to what appear to be many legitimate business expenditures, the #3041 Account includes almost two hundred charges for what can only be explained as personal expenses. A summary of those personal expenses for Ms. McNeil is included on pages 4 through 7 of **Exhibit 5**, and totals $23,712.99 for 2014, and an additional $9,793.29 between January and the end of February 2015 before the account was closed. *Id*. Those expenses include the same sort of grocery, gasoline and food expenses, and yoga and spa charges, as well as vacations in the Bahamas, Las Vegas, and Jamaica, and over $300 in tickets to a Detroit Pistons game. *Id*.

In February 2015, Ms. McNeil moved the Nextpoint account to Comerica – the same time she moved the personal account at Talmer Bank discussed above. That Comerica account ended in #2655, and the statements are attached as **Exhibit 10**. As with the #3041 Account at Talmer, Ms. McNeil continued to use this account for personal expenses. A summary of those personal expenses is included on page 8 of **Exhibit 5**, and totals $1,814.28 for 2015. *Id*. Those expenses include the same sort of grocery, gasoline and food expenses, as well as another trip to Cedar Pointe Amusement Park and roughly $900 in cash withdrawals. *Id*.

4. <u>The Nextpoint Escrow Account with Comerica Bank</u>

In addition to the Comerica #2655 Account discussed above, Nextpoint also had an escrow account ending in #2663. The statements for that account are attached as **Exhibit 11**. In addition to what appear to be legitimate business expenditures, the #2663 Account includes almost two hundred more charges for what can only be explained as personal expenses. A summary of those personal expenses for Ms. McNeil is included on pages 10 through 12 of **Exhibit 5**, and totals $41,162.32 for 2015 before the filing of Ms. McNeil's petition. *Id*. Those expenses include the same sort of grocery, gasoline and food expenses, as well as yoga and spa charges and over $16,000 in cash withdrawals. *Id*. They also include vacation charges in Paris and Chicago, sports betting charges, and yet another trip to Cedar Pointe. *Id*.

5. Summary of Undisclosed Income

In total, as explained above, Ms. McNeil had gross income of more than $81,000 in both 2014 and 2015, as can be seen from the summary below:

**2014 Gross Income**

| | |
|---|---|
| • Deposits into Debtor's Talmer #3505: | $48,409.10 |
| • Expenses in NID Detroit Fifth Third #8408: | $9,325.63 |
| • Expenses in Nextpoint Talmer #3041: | +$23,712.99 |
| **Total 2014 Income:** | **$81,447.72** |

**2015 Gross Income**

| | |
|---|---|
| • Deposits into Debtor's Talmer #3505: | $9,090.29 |
| • Deposits into Debtor's Comerica #1031: | $20,095.43 |
| • Expenses in Nextpoint Talmer #3041: | $9,793.29 |
| • Expenses in Nextpoint Comerica #2655: | $1,814.28 |
| • Expenses in Nextpoint Comerica #2663: | $41,162.32 |
| **Total 2015 Income:** | **$81,955.61** |

These two years of income total $163,403.33 in total income for Ms. McNeil for 2014 and 2015 prior to her bankruptcy filing. She only discloses $27,500 in gross income for 2015 – not the true amount of $81,955.61. She also only discloses "estimated" income for 2014 of $30,000 – not the true amount of $81,447.72. Thus, Ms. McNeil concealed at least $105,903.33 in income for those two years. Her disclosures under oath about her historical income are false.

### C. <u>Ms. McNeil's Undisclosed Counterclaim for $35,000</u>

Since at least October 2014, Ms. McNeil has believed that she possesses a claim against NID for back pay and wages owed for services rendered. She did not disclose this claim in her originally-filed Schedules, signed under penalty of perjury.

Ms. McNeil's original Schedule B, filed on November 8, 2015, is devoid of any mention of a claim against NID for unpaid wages. [*See* **Ex. 1**, pp.7-10]. Five months later, Ms. McNeil filed her Amended Schedule B [Doc. No. 33, **Ex. 9**]. That document disclosed, for the first time, a "Claim against NID Housing for unpaid wages" in the amount of $36,768.00. *Id*. at 7.

The day after Ms. McNeil's Amended Schedule B was filed, counsel for the Chapter 7 Trustee contacted Debtor's counsel and asked for all information related to the claim. [*See* **Ex. 10**, p.1]. Prior to that email, all Ms. McNeil had provided was a copy of an unsigned Counter-Complaint, with the caption for NID's lawsuit against Ms. McNeil and her company, NID Detroit. *Id*. at 3-8. That counterclaim contains the signature block for Ms. McNeil's defense counsel, and is dated October 20, 2014 – indicating Ms. McNeil has been on notice of this cause of action for at least a year prior to her bankruptcy filing in November 2015.

Ms. McNeil's counsel responded to the Chapter 7 Trustee's email request on April 12, 2016. *See id*. at 9. That response included an attached document called

"BHC Accounts Receivable.xlsx," which has been attached as pages 10 and 11 of **Exhibit 10**. Debtor's counsel indicates in her April 12, 2016 email that the figure used on Amended Schedule B – $36,768.00 – is also false, and that the real amount should be $35,725.00. *Id.* at 8. No amended Schedule B has been filed to reflect this correction.

**D. Ms. Neil's Bank Account & Pending Deals Disclosures**

Ms. McNeil's original Schedule B discloses current bank accounts at Comerica Bank. **Ex. 1**, p.7. Presumably, these include the #1031 Account whose statements are attached as **Exhibit 8** to this motion. No accounts are disclosed in answer to Question 11 as having been closed in the year prior to the Debtor's bankruptcy filing on November 8, 2015. **Ex. 1**, p. 31.

These disclosures are false, because they do not disclose the #3505 Talmer Bank Account in Ms. McNeil's name. *See* **Ex. 7**. The statements in **Exhibit 7** run from December 2013 through March 13, 2015 – less than eight months prior to the bankruptcy filing. Either the account is still open, in which case the Debtor has not disclosed it on Schedule B, or it was closed, in which case it was not disclosed on Question 11. One of those statements logically must be false.

So too with Ms. McNeil's disclosures of funds due to her for real estate deals that were pending at the time of her bankruptcy filing. Ms. McNeil's original Schedule B discloses $7,000 in "Pending Deals at the time of bankruptcy." **Ex. 1**,

p.9. Her amended Schedule B, filed five months later, though, only discloses $2,950 in such claims. **Ex. 12**, p.7. One of those statements logically must be false.

## IV. STANDARD OF REVIEW

This motion is brought under Fed. R. Civ. P. 56(a), which is incorporated by reference in Fed. R. Bankr. P. 7056. That rule provides as follows, in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations and quotation omitted). If and when a *prima facie* case is demonstrated by the moving party under section 727(a)(4)(A), "the burden of production will shift to the debtor to provide a credible explanation for their actions." *In re Halishak*, 337 B.R. 620, 626 (Bankr. N.D. Ohio 2005).

## V. ARGUMENT

When Ms. McNeil filed her chapter 7 bankruptcy petition, she signed documents under penalty of perjury which were full of material errors about her assets and financial circumstances. These statements were made, at the very least, with a reckless disregard for their truth, and nothing more need be proven for the Court to deny Ms. McNeil's discharge under 11 U.S.C. § 727(a)(4)(A).

Count II of the U.S. Trustee's Complaint seeks denial of Ms. McNeil's discharge under Section 727(a)(4)(A) of the Bankruptcy Code. That statutory section states that the Court shall grant debtors a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case – made a false oath or account." 11 U.S.C. § 727(a)(4)(A). "Complete financial disclosure is a prerequisite to the privilege of a discharge." *In re Kenney*, 227 F.3d 679, 685 (6th Cir. 2000) (internal quotation omitted). Without such disclosures being made in complete candor, the bankruptcy system could not effectively function:

> The bankruptcy code requires a debtor to cooperate in the bankruptcy process by imposing certain disclosure requirements. In describing the nature and extent of the disclosure obligations of debtors in chapter 7, the judicial pronouncements in the cases are quite firm. A debtor's complete disclosure is essential to the proper administration of the bankruptcy estate.

*In re Sharp*, 244 B.R. 889, 891 (Bankr. E.D. Mich. 2000) (internal citation omitted); *see also In re Rule*, 2011 WL 841505, *6 (Bankr. E.D. Ky. Mar. 7, 2011) ("A bankruptcy discharge is grounded upon the public policy of freeing the honest

but unfortunate debtor from the financial burdens of prepetition debts"). Errors or omissions from a debtor's schedules and statement of financial affairs constitute grounds for denial of discharge:

> Under this section, an omission alone from the debtor's statement of affairs or schedules is grounds for denying a discharge. If the debtor fails to fully provide information that is required, the debtor will be denied a discharge under § 727(a)(4). Of course, a debtor may, at times, make a misstatement and prove that the misstatement caused minimal harm to the estate. However, the determination of relevance and importance of the question is not for the debtor to make.

*In re Cutler*, 291 B.R. 718, 725 (Bankr. E.D. Mich. 2003) (internal citations and quotations omitted).

The Sixth Circuit has previously laid out five elements for determining whether discharge should be denied under section 727(a)(4)(A):

> In order to deny a debtor a discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case.

*In re Keeney*, 227 F.3d at 685. If when a *prima facie* case is demonstrated by the party seeking denial of the debtor's discharge, "the burden of production will shift to the debtor to provide a credible explanation for their actions." *In re Halishak*, 337 B.R. 620, 626 (Bankr. N.D. Ohio 2005).

As explained below, elements one, two, three and five are easily dispensed with – this case really centers around whether Ms. McNeil made her false statements with fraudulent intent. The U.S. Trustee contends that no genuine

dispute of material fact exists with this element, and that Ms. McNeil is unable to provide a credible explanation for her actions. Under the totality of the circumstances then, as *Keeney* requires this Court to consider, summary judgment is therefore proper.

### A. Disclosures Were Made Under Oath that Were False, and Related Materially to the Bankruptcy.

Three of the five elements are beyond serious dispute. Ms. McNeil made statements about her assets, household income, and her financial circumstances in her schedules and in her Statement of Financial Affairs as described above. All of these documents were signed by Ms. McNeil under penalty of perjury. The first element of section 727(a)(4)(A) is therefore satisfied.

As outlined above, these disclosures were also false, satisfying element two. Ms. McNeil has admitted this with respect to the cause of action and the value of her pending deals at the time of bankruptcy – through the filing of her Amended Schedule B. [**Ex. 12**]. Her statement that she did not own or manage NID Detroit is also false in light of the Articles of Incorporation which bear her signature. [**Ex. 2**]. Her statement that she did not have any closed bank accounts in the year prior to her bankruptcy filing is false in light of her Talmer Bank records themselves. [*See* **Ex. 7**]. Finally, Ms. McNeil's income disclosures for 2014 and 2015 are false in light of her 2015 Form 1099 as well as the bank records discussed above. [*See* **Exs. 4-11**]. The second element under 727(a)(4)(A) is therefore satisfied.

Finally, these false disclosures relate materially to Ms. McNeil's bankruptcy. As noted by the Sixth Circuit:

> The subject of a false oath is material if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.

*In re Kenney*, 227 F.3d at 686 (internal quotation omitted). A debtor's failure to accurately disclose assets – such as the property and additional household income not disclosed by Ms. McNeil in this case – meet this standard. *See In re Rowland*, 442 B.R. 281, 286 (Bankr. S.D. Ohio 2010) (misleading information in statement of financial affairs is material under 727(a)(4)(A)). The fifth element is therefore satisfied.

**B. Ms. McNeil Knew Her Disclosures Were False.**

Ms. McNeil also knew the disclosures discussed above were false. Courts commonly analyze this factor in conjunction with fraudulent intent. *See, e.g., In re Sharp*, 244 B.R. at 893 ("The primary issue in this case is whether these omissions and concealments were knowing and fraudulent"). As the Western District of Kentucky Bankruptcy Court recently discussed:

> To find the requisite degree of fraudulent intent, the court must find the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior to justify the finding of fraud. The trustee may prove the debtor's fraud by *evidence of the debtor's awareness of the omitted asset* and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or *that the debtor acted so recklessly in nor reporting the asset that fraud is implied*.

*In re Rule*, 2011 WL 841505, *7 (emphasis added). Courts may deduce such intent "from all the facts and circumstances of a case." *Keeney*, 227 F.3d at 686 (internal citation and quotation omitted).

In this case, there is no genuine dispute of material fact that Ms. McNeil knew of the existence of these assets and income. While these required disclosures may have slipped her mind at any given time, Ms. McNeil has come forward with no evidence that she didn't know about the existence of her company, or her Talmer Bank account, or the NID counterclaim, or the withdrawals she took from corporate accounts that should have been disclosed as income. The third element under section 727(a)(4)(A) is therefore satisfied.

### C. Ms. McNeil's Reckless Disregard for the Truth in her Sworn Statements and Testimony Demonstrates her Fraudulent Intent.

The final element for denial of Ms. McNeil's discharge under 727(a)(4)(A) – and the only element upon which there can be any conceivable dispute – is fraudulent intent. Ms. McNeil's reckless disregard for the truth in her Schedules and her Statement of Financial Affairs satisfies this requirement, permitting the Court to draw an inference of fraudulent intent against her. The Court should draw just such an inference in this case. In *Keeney*, the Sixth Circuit discussed the standard of proof for deducing fraudulent intent under section 727(a)(4)(A) as follows:

> [I]ntent to defraud involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission you

> know will create an erroneous impression. A reckless disregard as to whether a representation is true will also satisfy the intent requirement.

*Keeney*, 227 F.3d at 685-86 (internal citation and quotation omitted). Along those lines, the Eastern District of Michigan finds such fraudulent intent present where defendants make numerous errors and omissions in their schedules and statement of financial affairs. *See, e.g., In re Cutler*, 291 B.R. 718, 726 (Bankr. E.D. Mich. 2003) ("A series or pattern or errors or omissions may have a cumulative effect giving rise to an inference or an intent to deceive"); *In re Summers*, 320 B.R. 630, 642 (Bankr. E.D. Mich. 2005) ("other courts have found fraudulent intent from circumstantial evidence when there are numerous errors and omissions in a debtor's schedules of assets and liabilities and statement of financial affairs").

Such a pattern of omissions and errors exists in this case. These facts, under *Keeney*, establish a reckless disregard for the truth, and no genuine dispute of material fact remains. Further, there is no conceivable evidence the Debtor could offer to dissuade the Court from the only possible conclusion: that the Debtor’s false oaths were committed with fraudulent intent. The fourth, and for this analysis, final remaining, element is therefore satisfied.

**D. Summary Judgment is Appropriate on This Factual Record.**

The U.S. Trustee recognizes that actions for denial of discharge under section 727(a)(4)(A) often "involv[e] a fact-intensive analysis related to fraudulent intent [and] are not amenable to disposition by summary judgment." *In re*

*Rowland*, 441 B.R. 281, 286 (Bankr. S.D. Ohio 2010). On facts similar to those before this Court, though, other courts have been willing to dispose of matters at the summary judgment phase – and this Court should do the same here. As the Bankruptcy Appellate Panel for the Sixth Circuit held:

> the mere fact that the debtor's mental state or intent is an element of a cause of action is not, in and of itself, sufficient reason to defeat a motion for summary judgment. If the debtor's denial of knowledge is so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it, summary judgment is also appropriate.

*In re Beckham*, 2009 WL 1726526, *6 (6th Cir. B.A.P. June 19, 2009) (McIvor, J.) (internal citations and quotations omitted).

Other bankruptcy courts have granted summary judgment under 727(a)(4)(A) where the defendant failed to disclose income. In one such case, the defendant failed to schedule $50,000 in real estate commissions as having been earned. *In re Corona*, 2010 WL 1382122, *2 (D.N.J. Apr. 5, 2010. The *Corona* court relied upon what it characterized as a series of omissions and errors in the debtor's filed documents in granting summary judgment:

> In the present case, it is clear that the Defendant was at least reckless when she made false oaths in her Petition and at the 341 meeting. First, the assets and liabilities omitted from the Petition were acquired by the Defendant prior to the petition date. Therefore, the Defendant had knowledge of these assets and liabilities at the time of her filing. Second, numerous assets and liabilities were omitted from the Defendant's Petition. The Defendant argues that these omissions were inadvertent and not made with the intent to deceive. The fact that there was a "series or pattern" of omissions in the original Petition, however, suggests to this Court that the Defendant's actions were not

> the result of inadvertence, but rather the type of extreme carelessness or reckless indifference that equates to fraud and a bar to discharge.

*In re Corona*, 2010 WL 1382122, *10 (footnotes omitted). The Northern District of Ohio agrees:

> In the context of § 727(a)(4)(A), a credible explanation is one that is both plausible and, despite all the indications of fraud, is still capable of being believed. This is not an insignificant burden. And in assessing the credibility of the explanation, the Court will not engage in speculation for the debtor, as it is the debtor, and the debtor alone, who is in the best position to know and be able to explain the event(s) in question.

*In re Halishak*, 337 B.R. 620, 629 (Bankr. N.D. Ohio 2005) (citation omitted). The same is true in the instant case, where Ms. McNeil has offered no credible explanation – and, frankly, cannot offer such an explanation – for the inaccuracies and nondisclosures she made.

In *Stamat v. Neary*, 635 F.3d 974 (7th Cir. 2011), two doctors concealed income from their medical practice in the course of their bankruptcy filing, and their discharge was denied under 727(a)(4)(A). Coupled with other errors and omissions in their filings, the Seventh Circuit upheld denial of their discharges:

> Given the Stamats' level of education and business experience, their failure to disclose the required past business interests, property transfers, and income as discussed above shows a reckless disregard sufficient for the bankruptcy court's finding of intent under section 727(a)(4)[.]

*Stamat*, 635 F.3d at 982. Here, Ms. McNeil is a sophisticated businesswoman with an MBA and a realtor's license, who has owned or operated multiple businesses in the few years prior to her bankruptcy filing. Coupled with her other omissions and

errors, Ms. McNeil exhibits a similarly reckless disregard for the truth in her bankruptcy filings.

The relevant facts of this case are analogous to those of *In re Summers*, 320 B.R. 630 (Bankr. E.D. Mich. 2005). In *Summers*, this Court denied the discharge of a debtor who failed to accurately disclose his current and historical income, coupled with numerous other inaccuracies in his original bankruptcy filings. *Summers*, 320 B.R. at 638-44. The Court found that the debtor's level of candor in his schedules to be "cavalier at best," *Summers*, 320 B.R. at 643, to a level which warranted denial of that debtor's discharge:

> The Court cannot condone the filing of slipshod schedules by a debtor who dismisses his paramount responsibility to be candid, accurate, and honest as a mere formality to be corrected later if it suits him, or not at all. The bankruptcy system could not function were this cavalier attitude accepted.

*Id*. at 644. The same is true in the instant case. On this record, the Court should grant the U.S. Trustee's motion for summary judgment under 11 U.S.C. § 727(a)(4)(A), and deny the discharge of Defendant Jamara Y. McNeil-Simpson. In the alternative, even if the Court does not grant summary judgment on the fifth element – fraudulent intent – the Court should enter partial summary judgment for the U.S. Trustee on all the other elements, and leave fraudulent intent as the only potential issue for trial.

## VI. CONCLUSION

For these reasons, the Court should **GRANT** the U.S. Trustee's motion for summary judgment, and **DENY** Defendant/Debtor's discharge.

Respectfully submitted,

**DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9

By /s/ Sean M. Cowley
Trial Attorney
Office of the U.S. Trustee
211 West Fort St - Suite 700
Detroit, Michigan 48226
(313) 226-3432
Sean.Cowley@usdoj.gov
[P72511]

Dated: August 12, 2016

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: Case No. 15-56285-tjt

**Jamara Y. McNeil-Simpson,** Chapter 7

Debtor. Hon. Thomas J. Tucker
_______________________________________/

**Daniel M. McDermott,**
**United States Trustee,**

Adversary Case No. 16-4256

Plaintiff,

v.

**Jamara Y. McNeil-Simpson,**

Defendant.
_______________________________________/

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2016, I served copies as follows:

1. Documents Served: *Motion for Summary Judgment, Notice of Motion, Brief, Exhibits* and *Certificate of Service.*

2. Served Upon: Deanna Waller-Bundy
deannabundy@yahoo.com

3. Method of Service: The Court's electronic noticing system

**DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9

By: /s/ Karen Riggs
Paralegal
Office of the U.S. Trustee
211 West Fort Street - Suite 700
Detroit, Michigan 48226
(313) 226-7259
Karen.Riggs@usdoj.gov

Dated: August 12, 2016

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 15-56285-tjt |
| **Jamara Y. McNeil-Simpson,** | Chapter 7 |
| Debtor. | Hon. Thomas J. Tucker |

_______________________________________/

**Daniel M. McDermott,**
**United States Trustee,** Adversary Case No. 16-4256

Plaintiff,

v.

**Jamara Y. McNeil-Simpson,**

Defendant.
_______________________________________/

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Debtor's Petition, Schedules and Statement of Financial Affairs |
| Exhibit 2 | NID HCA Detroit, LLC Documents |
| Exhibit 3 | Debtor's Deposition dated October 22, 2015 |
| Exhibit 4 | Debtor's 2014 Form 1099 |
| Exhibit 5 | Summary of Bank Record Exhibits |
| Exhibit 6 | NID HCA Detroit LLC's 5th 3rd Account #8408 Records |
| Exhibit 7 | Debtor's Talmer Bank Account #3505 Records |
| Exhibit 8 | Debtor's Comerica Bank Account #1031 Records |
| Exhibit 9 | Nextpoint Talmer Bank Account #3041 Records |
| Exhibit 10 | Nextpoint Comerica Bank Account #2655 Records |
| Exhibit 11 | Nextpoint Comerica Bank Account #2663 Records |
| Exhibit 12 | Debtors' Amended Schedule B |
| Exhibit 13 | Documents Related to Debtor's NID Counterclaim |