**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

**In re:**
**JAMARA Y. McNEIL-SIMPSON** **CASE NO: 15-56285**
**CHAPTER: 7**
**JUDGE: TUCKER**

**_Debtor(s)_______________ ___/**

**Daniel M. McDermott,**
**United States Trustee/Plaintiff,**
**v.** **Adv Proc. No. 16-04256**
**JAMARA Y. McNEIL-SIMPSON**

**Debtor/Defendant**
**_____________________________/**

**DEBTOR/DEFENDANT'S MOTION TO FOR SUMMARY JUDGMENT, TO DISMISS, AND TO STRIKE ADVERSARY PROCEEDING PURSUANT TO FED. R.BANKR.P. 7012 & 7056**

**NOW COMES** Debtor/Defendant Jamara Y. McNeil-Simpson, by and through her attorney, Bundy Legal Services, PLC, does hereby move this Court for an order of dismissal of the Plaintiff's adversary proceeding pursuant to Fed. R. Bankr. P. 7012 and 7056, for the following reasons:

1. The Defendant, Jamara Y. McNeil-Simpson, filed for relief under Chapter 7 of the United States Bankruptcy Code on November 8, 2015.
1. The Plaintiff, Daniel M. McDermott, United States Trustee, has filed an adversary proceeding against Jamara which seeks to deny her discharge under 11 USC §727(a)(2),(3),(4), and (5).
2. Count I entitled "Denial of Discharge Pursuant to 11 U.S.C. §727(a)(2) fails to state a cause of action upon which relief can be granted and based on the attached affidavit, Exhibit 5, presents no issue of genuine fact..
3. Count II entitled "Denial of Discharge Pursuant to 11 U.S.C. §727(a)(3) fails to state a cause of action upon which relief can be granted and based on the attached affidavit, Exhibit 5, presents no issue of genuine fact.

4. Count II entitled "Denial of Discharge Pursuant to 11 U.S.C. §727(a)(4) fails to state a cause of action upon which relief can be granted and based on the attached affidavit, Exhibit 5, presents no issue of genuine fact.
5. Count II entitled "Denial of Discharge Pursuant to 11 U.S.C. §727(a)(5) fails to state a cause of action upon which relief can be granted and based on the attached affidavit, Exhibit 5, presents no issue of genuine fact.
6. Concurrence has been sought and not received.

WHEREFORE, the Defendant respectfully requests that this Honorable Court strike and dismiss the adversary proceeding and grant summary judgment in her favor for the reasons set forth herein and in the accompanying brief and affidavit.

Dated: August 12, 2016

Respectfully submitted,

Bundy Legal Services PLC
/s/Deanna P. Waller-Bundy
Deanna P. Waller-Bundy (P73566)
Attorney for Defendant/Debtor
24001 Southfield Rd, Ste 106
Southfield, MI 48075
deannabundy@yahoo.com
248-875-7720

# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

| | |
|---|---|
| **In re:** | |
| **JAMARA Y. McNEIL-SIMPSON** | **CASE NO: 15-56285** |
| | **CHAPTER: 7** |
| | **JUDGE: TUCKER** |
| **Debtor(s)___________________/** | |
| **Daniel M. McDermott,** | |
| **United States Trustee/Plaintiff,** | |
| **v.** | **Adv Proc. No. 16-04256** |
| **JAMARA Y. McNEIL-SIMPSON** | |
| **Debtor/Defendant** | |
| **_____________________________/** | |

**ORDER GRANTING DEFENDANT'S MOTION TO FOR SUMMARY JUDGMENT, TO DISMISS, AND TO STRIKE ADVERSARY PROCEEDING PURSUANT TO FED. R.BANKR.P. 7012 & 7056**

Jamara Y. McNeil-Simpson, by and through her attorney, Bundy Legal Services, PLC, having filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056, a Motion to Dismiss and a Motion to Strike pursuant to Fed. R. Civ. O. 12 and Fed. R. Bankr. P. 7012; and no opposition for the relief requested having been timely filed by any of the interested parties, and the Court being fully advised in the premises;

IT IS HEREBY ORDERED that the Motion is Granted.

**EXHIBIT 1**

IT IS FURTHER ORDERED that the Plaintiff's adversary proceeding is stricken and that summary judgment is granted in favor of Defendant Jamara McNeil-Simpson and that Adversary Proceeding Number 16-04256 is dismissed with prejudice.

IT IS FURTHER ORDERED that this Order is effective immediately upon entry by this Court notwithstanding the provisions of FRBP 4001(a)(3).

# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

**In re:**
**JAMARA Y. McNEIL-SIMPSON** — **CASE NO: 15-56285**
**CHAPTER: 7**
**JUDGE: TUCKER**

**_Debtor(s)________________ ___/**

**Daniel M. McDermott,**
**United States Trustee/Plaintiff,**
**v.** — **Adv Proc. No. 16-04256**
**JAMARA Y. McNEIL-SIMPSON**

**Debtor/Defendant**
**_____________________________/**

## NOTICE OF MOTION TO FOR SUMMARY JUDGMENT, TO DISMISS, AND TO STRIKE ADVERSARY PROCEEDING PURSUANT TO FED. R.BANKR.P. 7012 & 7056

Defendant has filed a Motion for Summary Judgment, to Dismiss and to Strike Adversary Proceeding to Fed. R. Bankr.P 7012 and 7056 with thee Bankruptcy court. The motion is on file with the Bankruptcy Court if you wish to review it.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the motion, or if you want the court to consider your views on the motion, within fourteen (14) days from the date of service of this notice, you or your attorney must:

1. File with the court a written response or an answer explaining your position at:

   United States Bankruptcy Court
   211 West Fort Street, Suite 1700
   Detroit, MI 48226

   If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

2. You must also mail a copy to:

   Deanna P. Waller-Bundy (P73566)
   Attorney for Defendant/Debtor
   24001 Southfield Rd, Ste 106
   Southfield, MI 48075

3. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Bundy Legal Services PLC
/s/Deanna P. Waller-Bundy
Deanna P. Waller-Bundy (P73566)
Attorney for Defendant/Debtor
24001 Southfield Rd, Ste 106
Southfield, MI 48075
deannabundy@yahoo.com
248-875-7720

Dated: August 12, 2016

# EXHIBIT 3

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

**In re:**
**JAMARA Y. McNEIL-SIMPSON** — **CASE NO: 15-56285**
**CHAPTER: 7**
**JUDGE: TUCKER**

**Debtor(s) /**

**Daniel M. McDermott,**
**United States Trustee/Plaintiff,**
**v.** — **Adv Proc. No. 16-04256**
**JAMARA Y. McNEIL-SIMPSON**

**Debtor/Defendant**
**/**

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO FOR SUMMARY JUDGMENT, TO DISMISS, AND TO STRIKE ADVERSARY PROCEEDING PURSUANT TO FED. R.BANKR.P. 7012 & 7056**

## Background

The debtor entered into a contract with NID-HCA to provide housing counseling services. Jamara McNeil-Simpson was an independent contractor and not an employee of NID. Ms. McNeil-Simpson formed NID HCA Detroit, LLC to operate the NID Freddie Mac Borrower Help Center (BHC) in Detroit, Michigan because she did not want to accept checks from NID as an individual. Checks from NID national's office were deposited into the NID HCA Detroit, LLC to operate and run the business. This was opened PRIOR to receiving a contract that stated it violated the national NID office standards.

There were two channels of business within the BHC as provided for in the NID Simpson Agreement. The first channel of business was helping distressed homeowners avoid foreclosure. These clients would have a file opened for them which would include an action plan and submitting that plan to the mortgage servicer or lender. Invoices were submitted to NID-HCA for services rendered and payments were received from NID-HCA. See attached payment invoices.

The second channel of business operated as a call center specifically for delinquent

Freddie Mac Borrowers. This was a new line of business for NID-HCA. Freddie Mac would provide a list of delinquent Borrowers with the expectation that BHC would attempt to call those borrowers a minimum of three times per month and offer housing counseling services. This channel of business required the debtor/staff to complete right party contacts, complete packages pursuant to the NID-HCA Freddie Mac Project Agreement with Certified Branch Office Managers. Exhibit 4-1 - See attached agreement. The process established by NID-HCA required the debtor to track completions and submit invoices to NID-HCA via Appendix G reports. Exhibit 4-1a. The debtor was not paid in full for invoices submitted to NID-HCA for this channel of business. The total due was $55,725.00. Mr. Carlisle paid two payments in July of $10,000 each leaving a balance of $35,725.00. See Exhibit 4-2a,b. The Detroit BHC operated this channel of business from April through August 2014. As part of the discovery, two check stubs for payments to the debtor for this channel of business. Exhibit 4-3 check stubs. The majority of the payments were for setting up the office, reimbursement to the other counselors, and training.

After repeated requests for payment, Mr. Carlisle of NID-HCA scheduled visit to the Detroit BHC to pay the outstanding invoices and audit the office. Communications between the parties were strained and during the visit, Mr. Carlisle ordered that the office be shut down.

**Standards for Relief**

Standards Governing a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Fed.R. Civ. P. 12(b)(6), is made applicable to adversary proceedings by Fed. R. Bankr. P. 8012. A motion to dismiss under Rule 12(b)(6) operates to test the sufficiency of a complaint. The court is required to construe the complaint in the light most favorable to the plaintiff, and accept all well-pleaded factual allegation in the complaint as true. *See Lewis v. ACB Bus. Servs.*, 135 F. 3d 389, 405 (6th Cir. 1998). A court will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v Fisk Univ.*, 443 F. 2d 121, 124 (6th Cir. 1874). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. Lewis, 135 F. 3d at 405 (internal citations omitted). A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v Gibson*, 355 U.S. 41, 45-46 (1957)). As explained by the Court in *Twombly,*

> …While a complaint attacked by a Rule 12(6)(b) motion to dismiss does not need detailed factual allegations… a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] … Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all allegations in the complaint are true (even if doubtful in fact)[.]

*Bell Atlantic Corp. v. Twombly,* 550 U.S. at 553-555 (citations omitted).

The Supreme Court later examined *Twombly* in the case of *Ashcroft v Iqbal*, 556 U.S. 662 (2009). In Iqbal, the Supreme Court held that *Twombly* applies to all civil actions and is not limited to antitrust disputes only as was the case in *Twombly*. Iqbal, 556 U.S. 684. The Iqbal Court further defined two "working principles underl[ying its] decision in *Twombly*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. … Rule 8 marks a notable and generous departure from the hyper-technical code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that stats a plausible claim for the relief survives a motion to dismiss. … Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. … But where the well-pleaded facts do not permit the court to infer more that the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 678-79 (citations omitted).

**<u>Denial of Chapter 7 Discharge Under Section 727</u>**

Count 1 - 11 U.S.C. §727(a)(2)

Section §727(a)(2) allows denial of discharge if a debtor, within one year of the bankruptcy filing, "transferred, removed, destroyed, mutilated, or concealed" property "with intent to hinder, delay, or defraud a creditor[.]" 11 US.C. §727(a)(2)(A). "This section encompasses two elements: 1) a disposition of property, such as concealment, and 2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing the property.'" *Keeney v Smith* (*In re*

*Keeney*), 227 F. 3d 679, 683 (6th Cir. 2000) (quoting *Hughes v Lawson* (*In re Lawson*), 122 F. 3d 1237, 1240 (9th Cir. 1997)).

Because the alleged acts occurred more than one year before Jamara McNeil-Simpson's bankruptcy filing, the plaintiff would have to rely on the continuing concealment doctrine which was not pled. Under that doctrine, a transfer made and recorded more than one year prior to the filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing." In re Keeney, 227 F. 3d at 684. The debtor has not attempted to conceal her financial transactions and dealings before or after the filing of the petition with the intent to further hinder, delay or defraud her creditors and their collection efforts against her. She has freely provided requested documentation to the trustee. There is nothing in the record to demonstrate that debtor took any action with the specific intent of harming creditors, there are no grounds for denial of debtor's general discharge under § 727(a)(2).

Plaintiff must show each element by a preponderance of the evidence *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *Rembert*, 141 F. 3d at 281.

Intent, under *Rembert*, is measures subjectively. *Id*. A debtor intends to deceive a creditor "when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick (in re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). The Plaintiff has failed to prove the requisite fraudulent intent. Plaintiff has provided no evidence in support of his allegations; nor has he proven each element. This complaint contains recitals of the elements of a cause of action, supported by mere conclusory statements. Fraudulent intent requires actual – not constructive – fraud. But if the false information is the result of mistake or inadvertence, the debtor remains entitled to a discharge. *McDermott v. Schwartz (In re Schwartz)*, 2015 WL 1010490, at *6 (Bankr. E.D. Mich. March 3, 2015) (quoting *In re Keeney*, 227 F.3d at 685-86).

Count 2 - 11 U.S.C. §727(a)(3)

Section 727(a)(3) allows for the denial of a debtor's general discharge if the debtor has destroyed books and records, unless the act of destruction was justified. The plaintiff offers no support for the denial of the debtor's discharge. Section 727(a)(3) bars a discharge where the

information a debtor fails to provide prevents the trustee and creditors from obtaining a complete picture of a debtor's finances. The debtor has provided documentation to allow the trustee to get a complete picture of her finances. The debtor has turned over bank statements to the trustee which will allow the trustee to trace funds and get a complete picture of her finances.

The party seeking the denial of a discharge has the burden of proving the inadequacy of the debtor's records. To determine whether the debtor's records are adequate, courts examine whether the records are the type kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience. *Wazeter*, 209 B.R. at 227. "Where debtors are sophisticated in business, and carry on a business involving significant assets, creditors have an expectation of greater and better record keeping." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 900 (7thCir. 2002) (citation omitted). The debtor provided the trustee with three years of financial records for all of her personal and business interests. In some instances, the trustee requested documents for transactions dating six years prior to the bankruptcy which the debtor had difficulty obtaining.

Count 3 - 11 U.S.C. §727(a)(4)

Section 727(a)(4)(A) directs the Court to grant a discharge unless: "the debtor knowingly and fraudulently, or in connection with the case-made a false oath or account[.]" 11 U.S.C. §727(a)(4)(A). To deny a debtor's discharge under this section, a plaintiff must demonstrate-by a peronderance of the evidence-that:

> (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case.

*In re Keeney,* 227 F. 3d at 685.

The trustee alleges that the debtor has concealed large amounts of prepetition income and that she has undervalued her income in this bankruptcy proceeding however he offers no proof of these allegations. Whether a debtor's statements or omissions constitute a false oath under section 727(a)(4)(A) is a question of fact. *In re Keeney,* 227 F.3d at 685.

Count 3 - 11 U.S.C. §727(a)(5)

Section 727(a)(5) provides that a debtor shall receive a discharge unless she "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." Section 727(a)(5) includes any unexplained disappearance or shortage of assets. *Solomon v. Barman (In re Barman)*, 244 B.R. 896, 90 (Bankr. E.D. Mich 2000).

In this case the Debtor's schedules reflect that she possessed minimal assets on the date she filed bankruptcy. This count fails to allege the essential element that the Debtor was unable to meet her liabilities. With respect to the actual disposition of the funds at issue, see the debtor's affidavit attached hereto and incorporated by reference herein.

## **Conclusion**

The Complaint should be stricken and dismissed with prejudice. In the alternative, Summary Judgment should be granted in favor of the Defendant Jamara McNeil-Simpson. Defendant respectfully requests that her motion be Granted.

Dated: August 12, 2016

Respectfully submitted,

Bundy Legal Services PLC
/s/Deanna P. Waller-Bundy
Deanna P. Waller-Bundy (P73566)
Attorney for Defendant/Debtor
24001 Southfield Rd, Ste 106
Southfield, MI 48075
deannabundy@yahoo.com
248-875-7720

# EXHIBIT 4

NID HOUSING
COUNSELING AGENCY

# NID-HCA FREDDIE MAC Project Agreement with Certified Branch Office Managers

This Agreement is made this __28____ day of _March______, 2014, by and between NID Housing Counseling Agency (hereinafter NID-HCA® "we," "us," "our," "its") having its principal place of business at Airport Centre, 7677 Oakport Street, Suite 1030, Oakland, California 94621 and the following three Certified Branch Office Managers (CBOMs): **1.** Cheryl Dixon ("CBOM," "you," "your") whose principal place of business and mailing address is: 24725 W. 12 Mile Road, Suite 118, Southfield, MI 48034; phone number: (248) 351-9354; fax number: (248) 281-0827; email address: nidhca_mi@yahoo.com; **2.** Scott Elia ("CBOM," "you," "your") whose principal place of business and mailing address is: 30630 West 12 Mile Road, Suite A, Farmington Hills, MI 48334; phone number: (248) 489-8008; fax number: (248) 489-8088; email address: nid.hca@hotmail.com; and 3. Jaye Simpson ("CBOM," "you," "your") whose principal business address and mailing address is: 2615 West 12 Mile Road, Berkley, MI 48072; phone number: (248) 298-5000; fax number: (248) 565-9095; email address: jayesimpson@realtor.com. The three CBOMs listed above and NID-HCA are collectively referred to herein as the "parties." NID-HCA's mailing address is Airport Centre, 7677 Oakport Street, Suite 1030, Oakland, California 94621; fax number: 510 268-9794; telephone number: 510 268-9792; and website address: www.nidonline.org.

The term "NID-HCA Freddie Mac Project" refers to the Joint Counseling Effort (the Project) to be made by NID-HCA and Freddie Mac. The main office for the Project is located at 19966 Livernois Avenue, Detroit, Michigan 48221, which is hereinafter referred to as the "Borrower Help Center" (BHC).

By this Agreement, NID-HCA engages all three CBOMs to work as independent contractors on the Project.

## Section 1: INCORPORATION OF OTHER AGREEMENTS

Your NID-HCA Certified Counselor Agreement and NID-HCA Certified Branch Office Manager Agreement are hereby incorporated by this reference as though set forth in full. This Agreement herein, hereinafter "this Agreement" or "the Agreement," likewise incorporates portions of the Memorandum of Understanding and Agreement and its Exhibit A, which has been executed, or will be executed between Freddie Mac and NID-HCA. A copy of this Memorandum of Understanding and Agreement is included herewith as **Exhibit 1** to this Agreement and is incorporated by this reference as though set forth in full. The portions so incorporated are spelled out clearly in this Agreement.

## Section 2: CERTIFICATION OF CBOM WARRANTIES AS TRUE AND VALID



CONFIDENTIAL

By signing this Agreement, CBOM acknowledges that all warranties and certifications in the incorporated agreements are true, valid, and up-to-date as of the execution date of this Agreement. This includes, but is not limited to, warranties that your place of counseling is accessible to persons with disabilities, that you are in good standing in the state in which you do business, and that you adhere to the NID-HCA Code of Ethics. Please review the incorporated agreements prior to signing this Agreement to ensure that your warranties and certifications are current and valid.

CBOMs verify that each has completed the Freddie Mac training course using the Freddie Mac Borrower Help Centers and Borrower Help Network Procedures materials. A copy of said materials is attached hereto as **Exhibit 2** and is incorporated by this reference as though set forth in full.

**Section 3: DIRECT COUNSELING DUTIES AND RESPONSIBILITIES**

CBOM shall abide by the provisions of **Exhibit A** to **Exhibit 1** in its entirety that apply to Non-Profit. (Substitute CBOM for Non-Profit in Exhibit A.) When appropriate, NID-HCA will work with CBOM to accomplish the purposes of the Agreement.

All three CBOMs shall be jointly responsible for the management, administration and oversight of both the BHC and all project counseling duties.

Duties:

1. Complete Right Party Contact Requirements and Right Party Contact Checklist: (See: **Exhibit 3**, Right Party Contact Checklist, which is incorporated by this reference as though set forth in full)

    - Establish whether a servicer has identified and discussed with a borrower, co-borrower, or trusted advisor, such as a housing counselor, the most appropriate options for delinquency resolution;
    - Establish a rapport with the borrower, expressing empathy and a desire to help;
    - Determine the reason for the delinquency and whether it is temporary or permanent;
    - Determine whether the borrower has vacated or plans to vacate the property;
    - Determine the borrower's current perception of his/her financial circumstances and ability to repay the debt;
    - Set payment expectations and educate the borrower on the availability of foreclosure alternative solutions;
    - Obtain a commitment from the borrower to either resolve the delinquency through traditional methods (paying the total delinquent amount) or engage in a foreclosure alternative solution.



CONFIDENTIAL

foreclosure alternative solution.

2. Benchmarks will be established to measure and monitor effective quality Right Party Contact.

3. Freddie Mac encourages and fully supports Servicers who have or will implement single point of contact models for the purpose of achieving contact continuity throughout the delinquency process.

4. CBOMs will collectively make, at a minimum, three attempts to contact borrower by telephone.

5. If a Borrower confirms to the Borrower Help Center/Borrower Help network that he/she does not want any further phone calls or letters from Freddie Mac, the BHC/BHN will inform Gloria Yates or Julio Artiga of this development by email.

2. Complete Counseling session(s)

- Counseling sessions will include a discussion of the financial situation of the borrowers, their intent to resolve the delinquency, the hardship reasons, and their income and expenses.
- Create an action plan for the borrower and assist them to submit a package to the servicer.
    - Uniform Borrower Solicitation package requirements for documentation that must be sent to a borrower, including:
        - Uniform Borrower Assistance Form, with hardship affidavit;
        - A borrower checklist
        - A solicitation letter
        - A FAQ document
        - An important notices section
        - IRS Form 4506-T

**Section 4: COMPENSATION**

1. Completion of Right Party Contact requirements: $75.00
2. Completion of Counseling Session, if needed (limited to Freddie Mac requirements not the full NFMC counseling session requirements): $75.00
3. Completion of Borrower Package with only Freddie Mac requirements, which includes completing Right Party Contact requirements in addition to counseling session: $250.00



CONFIDENTIAL

**Section 5: CONFLICT OF INTEREST**

NID-HCA has created forms that describe conflicts of interest to the client, leave space for you to disclose any relationships between you and industry partners, and a signature page for the client to acknowledge receipt of these disclosures. **Each client must be presented with this form to sign, even if you have no conflicts to disclose.**

**For clients with whom you meet face-to-face, a written disclosure must be provided and signed by the client. For clients receiving counseling via another format, for example telephone counseling, you must verbally or electronically provide a disclosure that meets the requirements in this section. Disclosure statements must be retained in the counseling file. A note indicating the date of verbal disclosure, or documentation of electronic disclosure, must be retained in the files of all those counseled.**

Please see your CBOM contract and related regulatory sources, such as the HUD Handbook 7610.1, for further information on conflicts of interest. Please contact the National Office if you have any questions relating to the conflict of interest disclosure and signed acknowledgement forms.

**Section 6: HANDLING FREDDIE MAC CONFIDENTIAL INFORMATION**

CBOM shall abide by the provisions of **Exhibit 1**, Section 4. (a) Through (h), inclusive, which apply to Non-Profit. (Substitute CBOM for Non-Profit in all these provisions.)

**Section 7: FREDDIE MAC REQUIREMENTS WITH REGARD TO SECURING THE CONTINUOUS CONFIDENTIALITY OF CLIENT INFORMATION (See: Exhibit I, page 5, section: 4 (f) (ii))**

The Memorandum of Understanding and Agreement **(Exhibit I)** requires that CBOM exercise a degree of care in handling "nonpublic personal information" that will "in no event be less than the degree of care required of financial institutions by GLB (Gramm-Leach-Bliley), and implementing rules and guidance." Exhibit I further sets forth the way in which CBOM shall handle "Protected Personal Information."

For the purposes of this Agreement "personal and financial information" signifies any personal or financial information that identifies, relates to, or describes a particular individual, that is received from clients, or from any another source. This definition includes the meanings of both "nonpublic information" and "protected personal information" as used in Exhibit I.

For purposes of this Agreement, the GLBA "Safeguards Rule" applicable to personal and financial information is as follows:



CONFIDENTIAL

CBOM shall maintain the confidentiality of personal and financial information at all times. Hard copies of client files must be kept in locked filing cabinets and electronic client files must be kept secure, and be accessible only by authorized individuals. You shall secure all client files and information whenever that information is not under your immediate control and command.

For the purposes of this Agreement, The GBLA "Disposal Rule" applicable to personal and financial information is as follows:

With regard to the disposal of "hard copy" personal and financial information, CBOM shall shred, or have shredded, these materials in a manner such that the information cannot be read or reconstructed.

With regard to the disposal of electronic files or media containing personal and financial information, CBOM shall destroy or erase, or have destroyed or erased, these electronic files or media in a manner such that the information cannot be read or reconstructed.

**Section 8: FREDDIE MAC AUTHORIZATION REQUIREMENTS**

CBOM will use the PERSONAL INFORMATION ADVISORY AND RELEASE AUTHORIZATION form, which is attached as **Exhibit 4** and incorporated by this reference as though set forth in full. CBOM will further use the DISCLOSURE OF INFORMATION OPT-OUT FORM, which is attached as Exhibit 5 and is incorporated by this reference as though set forth in full.

**Section 9: QUALITY CONTROL**

CBOM agrees to cooperate with NID-HCA's customary compliance oversight and quality control and any reasonable compliance and oversight requests made by Freddie Mac.

**Section 10: DURATION**

Based upon the your continued successful performance and fulfillment of the conditions of the Agreement, and upon the unfoldment of the conditions set forth by Freddie Mac in Section 2. of **Exhibit 1** to the Agreement, the Agreement is expected to run from its effective date **up through and including December 31, 2014**. If an extension period is offered, the parties will sign an addendum reflecting this extension.

**Section 11: VOLUNTARY TERMINATION OF THE AGREEMENT BY THE CBOM OR NID-HCA**



JJ

CONFIDENTIAL

which has been incorporated, in whole, by reference. Termination by one or more CBOMs does not affect the validity of the Agreement with respect to any remaining party or parties.

**Section 9: INVOLUNARY TERMINATION OF THE AGREEMENT BY NID-HCA**

The terms defining involuntary termination of this Agreement by NID-HCA are found in the CBOM agreement, which has been incorporated, in whole, by reference. Termination of one or more CBOMs does not affect the validity of the Agreement with respect to any remaining party or parties.

**Section 10: RISK, INDEMNIFICATION, AND NID-HCA VIOLATION REPORTING**

The terms defining risk, indemnification, and NID-HCA violation reporting are found in the CBOM agreement, which has been incorporated, in whole, by reference.

**Section 11: ENTIRE AGREEMENT, PARTIAL INVALIDITY, AND GOVERNING LAW**

This Agreement supersedes any and all other agreements, oral or written, between the parties hereto with respect to the NID-HCA Freddie Mac Project. Any provisions of this Agreement that are held to be invalid or unenforceable, either by a court of competent jurisdiction or an arbitration panel, shall not affect the remaining provisions, which shall nevertheless continue in full force and effect. This Agreement shall be construed and governed in accordance with the laws of the State of California.

**Section 12: ACCEPTANCE STATEMENT**

Each CBOM represents: I agree to comply with the provisions of the Agreement. I further understand that if I do not comply with all such requirements, NID-HCA can remove me from any affiliation of any kind from the NID-HCA Freddie Mac Project and pursue any other lawful remedies as set forth in this Agreement.

**BE AWARE THAT YOUR STATUS AS A NID-HCA CBOM DOES NOT AUTHORIZE YOU TO HOLD YOURSELF OUT AS A HOUSING COUNSELOR THAT IS APPROVED BY ANY OTHER AGENCY OR ORGANIZATION. TO DO THIS COULD OPEN YOU UP TO CRIMINAL PROSECUTION. FOR EXAMPLE, YOU CANNOT HOLD YOURSELF OUT AS A "HUD-APPROVED" FORECLOSURE MITIGATION COUNSELOR.**

Each CBOM represents: I understand that I become a NID-HCA CBOM participant in the NID-



38

CONFIDENTIAL

NID HOUSING
COUNSELING AGENCY

HCA Freddie Mac Project upon the proper execution of this Agreement and final approval by NID-HCA. I will return a signed copy of this Agreement to the NID-HCA National Office by March 28, 2014.

CBOM will receive a copy of the fully executed Agreement within thirty days from receipt via SharePoint.

**Dated:** ____________________

____________________
**CHERYL DIXON**

____________________
**Sign Name**

____________________
**Ray Carlisle, Jr.**
**Operations Manager - NID-HCA**

____________________
**Date**

**Dated:** ____________________

____________________
**SCOTT ELIA**

____________________
**Sign Name**

____________________
**Ray Carlisle, Jr.**
**Operations Manager - NID-HCA**

____________________
**Date**

**Dated:** March 28, 2014

J. Simpson
**JAYE SIMPSON**

[signature]
**Sign Name**

____________________
**Ray Carlisle, Jr.**
**Operations Manager - NID-HCA**

____________________
**Date**



CONFIDENTIAL

## Counselors/Intake Staff Report

**Solicitation List Dates: August 8 – August 22**
**Agency Name: NID-Housing Counseling Agency -Detroit**

What were your operating hours for this period? **M-W 9am -5pm; Th 11am – 7pm; Fri 9am -3pm; Saturday 11am – 3pm**

How many counselors were actively calling the list for this period?
**3**

How many hours did each counselor spend making calls for that period? **10**

$15e How many RPC contacts reached for that period? **146**

$15e How many counseling sessions were held for this period? **28**

How many appointments was schedule for this period? **1**

How many cancellations for this period? **0**

How many packages were sent to borrower to complete? **4**

$250 How many packages were submitted to the Servicer for this period? **0**

**INSTRUCTIONS:** Send responses to gloria_yates@freddiemac.com by noon on Mondays with a copy to your Freddie Mac day-to-day manager.

**FREQUENCY:** 2nd and 4th Fridays of the month

## Counselors/Intake Staff Report

**Solicitation List Dates: August 1 – August 8**
**Agency Name: NID-Housing Counseling Agency -Detroit**

What were your operating hours for this period? **M-W 9am -5pm; Th 11am – 7pm; Fri 9am -3pm; Saturday 11am – 3pm**

How many counselors were actively calling the list for this period?
**3 counselors**

How many hours did each counselor spend making calls for that period? **10**

How many RPC contacts reached for that period? **10**

How many counseling sessions were held for this period? **8**

How many appointments was schedule for this period? **0**

How many cancellations for this period? **0**

How many packages were sent to borrower to complete? **0**

How many packages were submitted to the Servicer for this period? **0**

**INSTRUCTIONS:** Send responses to gloria_yates@freddiemac.com by noon on Mondays with a copy to your Freddie Mac day-to-day manager.

**FREQUENCY:** 2nd and 4th Fridays of the month

## Counselors/Intake Staff Report

**Solicitation List Dates: July 12 – July 25**
**Agency Name: NID-Housing Counseling Agency -Detroit**

What were your operating hours for this period? **M-W 9am -5pm; Th 11am – 7pm; Fri 9am -3pm**

How many counselors were actively calling the list for this period? 3

How many hours did each counselor spend making calls for that period? 20

How many RPC contacts reached for that period? 56

How many counseling sessions were held for this period? 40

How many appointments was schedule for this period? 15

How many cancellations for this period? 4

How many packages were sent to borrower to complete? 25

How many packages were submitted to the Servicer for this period? 0

**INSTRUCTIONS:** Send responses to gloria_yates@freddiemac.com by noon on Mondays with a copy to your Freddie Mac day-to-day manager.

## Counselors/Intake Staff Report

**Solicitation List Dates: July 1 – July 11**
**Agency Name: NID-Housing Counseling Agency -Detroit**

What were your operating hours for this period? **M-W 9am -5pm; Th 11am – 7pm; Fri 9am -3pm**

How many counselors were actively calling the list for this period?
**Jaye Simpson**

How many hours did each counselor spend making calls for that period? **20**

How many RPC contacts reached for that period? **75**

How many counseling sessions were held for this period? **23**

How many appointments was schedule for this period? **5**

How many cancellations for this period? **3**

How many packages were sent to borrower to complete? **9**

How many packages were submitted to the Servicer for this period? **0**

**INSTRUCTIONS:** Send responses to gloria_yates@freddiemac.com by noon on Mondays with a copy to your Freddie Mac day-to-day manager.

**FREQUENCY:** 2nd and 4th Fridays of the month

# Counselors/Intake Staff Report

**Solicitation List Dates: June 16 – June 27**
**Agency Name: NID-Housing Counseling Agency -Detroit**

What were your operating hours for this period? **M-W 9am -5pm; Th 11am – 7pm; Fri 9am -3pm; Saturday 11am – 3pm**

How many counselors were actively calling the list for this period?
**3**

How many hours did each counselor spend making calls for that period? **20**

How many RPC contacts reached for that period? **166**

How many counseling sessions were held for this period? **2**

How many appointments was schedule for this period? **0**

How many cancellations for this period? **0**

How many packages were sent to borrower to complete? **3**

How many packages were submitted to the Servicer for this period? **0**

**INSTRUCTIONS:** Send responses to gloria_yates@freddiemac.com by noon on Mondays with a copy to your Freddie Mac day-to-day manager.

**FREQUENCY:** 2nd and 4th Fridays of the month

Freddie Mac

We make home possible℠

**Appendix G- Counseling/Intake Staff Report- Due Bi-monthly 2nd and 4th Friday**

Solicitation List Dates: JUNE 1 - JUNE 13

Agency Name: NID-HCA Detroit

What were your operating hours for this period?

Monday - Wednesday; 9am - 5pm; Thursdays 9am -7pm; Friday 9am -5pm

How many counselors were actively calling the list for this period?
(NAME OF COUNSELOR) C. Dixon, J. Simpson , A. Dixon

How many hours did each counselor spend making calls for that period? (NAME OF COUNSELOR)

2 Hours Per Counselor

How many RPC contacts reached for that period? 18

How many counseling sessions were held for this period? 4

How many appointments was schedule for this period? 6

How many cancellations for this period? 4

How many packages were sent to borrower to complete? 8

How many packages were submitted to the Servicer for this period? 3

© Freddie Mac 2013
Confidential

Freddie Mac
We make home possible℠

Jaye Simpson, Cheryl Dixon, Gerald Dixon

**Appendix G- Counselors/Intake Staff Report- Due Bi-monthly 2nd and 4th Friday**

May 23, 2014

**Solicitation List Dates:** May 23, 2014
**Agency Name:** NID HCA Detroit - Borrower Help Center

**What were your operating hours for this period?**

Mon., Tues., Wed., Friday 9:00 - 5:00, Thurs. 9:00 - 6:00

**How many counselors were actively calling the list for this period? (NAME OF COUNSELOR)**

**How many hours did each counselor spend making calls for that period? (NAME OF COUNSELOR)**

Jaye Simpson 12 hrs
Cheryl Dixon 8 hrs
Gerald Dixon 7 hrs

**How many RPC contacts reached for that period?**

8

**How many counseling sessions were held for this period?**

4

**How many appointments was schedule for this period?**

2

**How many cancellations for this period?**

0

**How many packages were sent to borrower to complete?**

4

**How many packages were submitted to the Servicer for this period?**

3

**Appendix G- Counselors/Intake Staff Report- Due Bi-monthly 2nd and 4th Friday**

**Solicitation List Dates:** 5/1/2014 - 5/15/2014
**Agency Name:** NID-HCA Freddie Mac Borrower Help Center

**What were your operating hours for this period?**
M - F; 9:00AM - 5:00PM; Thursdays Until 7pm; Saturday by scheduled appointments only.

**How many counselors were actively calling the list for this period? (NAME OF COUNSELOR)** 2

**How many hours did each counselor spend making calls for that period? (NAME OF COUNSELOR)** Jaye Simpson, Gerald Dixon

**How many RPC contacts reached for that period?** 12

**How many counseling sessions were held for this period?** 5

**How many appointments was schedule for this period?** 8

**How many cancellations for this period?** 3

**How many packages were sent to borrower to complete?** 8

**How many packages were submitted to the Servicer for this period?** 2

NID HOUSING
COUNSELING AGENCY

FM Call List - April 1 - 15

| | |
|---|---|
| # of Total Right Party Contacts | 1 |
| # of Voice Mail Messages Left | 48 |
| # of Total Calls | 69 |
| # of Disconnect Calls/Non-Working Phone Lines | 20 |

FM Call List - April 15 - 30

| | |
|---|---|
| # of Total Right Party Contacts | 21 |
| # of Voice Mail Messages Left | 173 |
| # of Total Calls | 293 |
| # of Disconnect Calls/Non-Working Phone Lines | 99 |

Prepared by Jaye Simpson 8/27/2014

Exhibit 4-2a - edited version

| Services Performed | April | May | June | July | August | Sept. | Estimated Losses Per Year |
| --- | --- | --- | --- | --- | --- | --- | --- |
| RPC @ $75 | $ 1,650.00 | $ 1,500.00 | $ 13,800.00 | $ 9,825.00 | $ 11,700.00 | | $ 92,340.00 |
| Counseled @ $75 | $ - | $ 675.00 | $ 450.00 | $ 4,725.00 | $ 2,700.00 | | |
| Package Completion @ $250 | $ - | $ 1,250.00 | $ 750.00 | | | | |
| J. Simpson Consultation | $ 5,000.00 | | | | | | |
| Unpaid Lease | | | | | $ 850.00 | | |
| Total Due | $ 6,650.00 | $ 3,425.00 | $ 15,000.00 | $ 14,550.00 | $ 15,250.00 | $ 850.00 | $ 55,725.00 |
| NID Payments | $ - | $ - | $ - | | $ - | | |
| July 9th | | | | $ 10,000.00 | | | |
| July 23rd | | | | $ 10,000.00 | | | |
| Total Due | $ (6,650.00) | $ (3,425.00) | $ (15,000.00) | $ 5,450.00 | $ (15,250.00) | $ (850.00) | |
| | | | | | | | |
| Requested Payment | $ (35,725.00) | | | | | | |

(8) IPS
up front funding
provided

NID HOUSING
COUNSELING AGENCY

July 19, 2014

Ms. Jaye Simpson
Manager, NID-HCA Berkley
2615 West 12 Mile Road
Berkley, MI 48072

Dear Jaye:

Please find herewith NID-HCA B of A check number 1064 in the amount of Ten Thousand Dollars ($10,000.00), representing a combination of upfront NFMC payments for the immediate past and present NFMC R8 reporting periods. This payment also includes a portion of your compensation for services under your NID-HCA BHC RPC agreement.

As you are aware we have had several concurrent activities regarding the Detroit BHC and the closing of two NID-HCA branch offices in the Detroit area. We appreciate your assistance and leadership in these successful efforts.

We will reconcile all allowable expenditures and reimbursements associated with the two offices and programs that you manage by August 10, 2014. The standard required backup documentation and completed reports will be the sources to reconcile approved reimbursements and or expenses.

We are providing this upfront payment to assure that you can continue to move productively forward as we return to normal business operations at both your NID-HCA Berkley and Detroit offices.

Thank you,

Ray Carlisle
President, NID-HCA

Cc: NID Accounting Department

1064

**NID HOUSING COUNSELING AGENCY**
3560 GRAND AVE
OAKLAND, CA 91010

DATE July 19, 2014 16-60/1220

PAY TO THE ORDER OF Jaye Simpson $ 10,000.00

Ten Thousand + 00/100 DOLLARS

**Bank of America**
West Altadena
2264 Lincoln Ave
Altadena CA

FOR BHC/NFMC Pymt Funds + Lost Telecom... 8-10-14

⑈001064⑈ ⑆122000661⑆ 20728⑈01429⑈

Bank of America Online Banking

## Business Advantage Chk - 1429: Account Activity Transaction Details

**Check number:** 0000001063

**Post date:** 05/19/2014

**Amount:** -11,132.00

**Type:** Check

**Description:** Check


NID HOUSING COUNSELING AGENCY
OAKLAND, CA

1063

DATE May 12, 2014

PAY TO THE ORDER OF Jale Simpson $ 11,132 00/100

Eleven Thousand one hundred Thirty two + 00/100 DOLLARS

Bank of America

FOR Freddie BHC Debut - NID TI office setup

[redacted]

072414255
Talmer Bank #101
2014-05-19
0101307520

- Grand Opening. We have receipts on the 5th/3rd bank statement

1500 income Sen
Grand opening Expense to Simpson

# BHC- Expensed Funds

**Funds from 0216:**

**Check # 6186-$4145.03**

**Training -Travel-Supplies**

**Check #6225-$5950.00**

**Contractor 50% for Building Prep-Insurance –Office and Utility Expenses**

**Amex Payment- $462.75-Bus Ride for the Grand Opening of the BHC** Went to Bus Company, not me.

**Check#6428- ~~$750~~.00-Intial Payments for Public Relations** VOID ~~750~~ [illegible] 1500 [illegible] ck # 4090

**Total-$11,307.78**

**Funds from 4370:**

**Freddie Mac funds are held in this account.**

**Check# 5703-$16,577.00-Grand Opening Budget was $6,577.00- Why did we ~~and~~ 10k to this invoice?** Add this

**Check#5704-$10,000.00** = the pay RPC to [illegible] by 8-10-14

**This check was processed with no back-up documentation. Jaye Simpson called and indicated that she needed to pay staff.** – not correct – they owed us based upon RPC we completed.

**Total-$26,577.00**

**Funds from B of A 1429:**


5704

$ **10,000.00

7/1/2014

[redacted]

✓

INCOME

NID-HOUSING COUNSELING AGENCY, INC.

[redacted]

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF [redacted]

MEMO

[redacted]

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF [redacted]

MEMO

[redacted]

6225

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF Jaye Simpson $ **5,350.00

Five Thousand Three Hundred Fifty and 00/100 DOLLARS

MEMO

[redacted]

Reimbursement to the Dixons - & on a check made payable to them from the 5th/3rd account. They will also sign a statement

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF [redacted] DOLLARS

MEMO

[redacted]

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF [redacted] Redact $ [redacted] DOLLARS

[redacted]

MEMO

[redacted]

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF [redacted] $ [redacted] DOLLARS

[redacted]

MEMO

[redacted]

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF [redacted] Redact $ [redacted] DOLLARS

[redacted]

MEMO

[redacted]

6222

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF [redacted] Redact $ [redacted] DOLLARS

[redacted]

MEMO

[redacted]

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF [redacted] DOLLARS

[redacted]

MEMO

[redacted]

[redacted] INC.

PAY TO THE ORDER OF [redacted] ACH Redact [redacted] DOLLARS

[redacted]

MEMO

[redacted]

6229

NID-HOUSING COUNSELING AGENCY, INC.

PAY TO THE ORDER OF CENTURY 21 PROFESSIONAL REALTY $ **4,250.00

Four Thousand Two Hundred Fifty and 00/100 DOLLARS

CENTURY 21 PROFESSIONAL REALTY

MEMO

[redacted]

Dixon

NOT ME!

NID-HOUSING COUNSELING AGENCY, INC. — 6184 — 4/23/2014

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO [redacted]

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — 4/28/2014

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO [redacted]

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — 6186 — 4/22/2014

PAY TO THE ORDER OF Jaye Bergman $ **4,145.03

Four Thousand One Hundred Forty-Five and 03/100

Jaye Bergman
NACDCA
2015 West 12 Mile Rd
Berkley, MI 48072

MEMO

[redacted]

05/02/2014 - #6186 - $4,145.03

NID-HOUSING COUNSELING AGENCY, INC. — 4/28/2014

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO [redacted]

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — [redacted]

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — [redacted]

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO [redacted]

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — 4/22/2014

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — 4/29/2014

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO [redacted]

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — [redacted]

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — 4/29/2014

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO [redacted]

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — [redacted]

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO

[redacted]

NID-HOUSING COUNSELING AGENCY, INC. — 4/29/2014

PAY TO THE ORDER OF [redacted] $ [redacted]

[redacted]

MEMO [redacted]

[redacted]




[redacted]

06/05/2014 - #5698 - $1,750.00




[redacted]

06/23/2014 - #5703 - $16,577.00

CBOM
- TRAINS
Simpson

This was NOT paid to me. It was paid to Linda Jackson.

10K income to Simpson
Balance Expense Reimbursement
He did pay this but he owed more based upon RPC

Check# 1063-$11,132.00 To Jaye Simpson

Start Up Budget for the BHC — ~~This~~ We have receipts for this It was NOT income. You have the buildout receipt.

Total-$11,132.00

# EXHIBIT 5

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

**In re:**
**JAMARA Y. McNEIL-SIMPSON** | **CASE NO: 15-56285**
**CHAPTER: 7**
**JUDGE: TUCKER**

**Debtor(s) /**

**Daniel M. McDermott,**
**United States Trustee/Plaintiff,**
**v.** | **Adv Proc. No. 16-04256**
**JAMARA Y. McNEIL-SIMPSON**

**Debtor/Defendant**
**/**

## AFFIDAVIT

NOW COMES Jamara McNeil-Simpson, after being first duly sworn, deposes and states as follows:

1. That I am the debtor named in Case No. 15-56285-tjt and Adversary No. 16-04256.
2. That in regard to Count #1 of the Adversary Complaint, I did not with the intent to hinder delay or defraud my creditors transfer, remove, destroyed, mutilated, or concealed property of the estate within one year before the filing of the petition or after the date of the filing of the petition.
3. That in regard to Count #2 of the Adversary Complaint, I have not failed to provide, concealed, destroyed, falsified, or failed to keep information, including books, documents, records and papers from which my financial condition or business transactions might be ascertained for myself personally.
4. That in regard to Count #3 of the Adversary Complaint, I have fully and accurately described my assets, financial dealings, and transfers of assets. I have not may false oaths in my written and oral statements in violation of 11 U.S.C. section 727(a)(4)(A).
5. That in regard to Count #4 of the Adversary Complaint, I have explained any loss of assets or deficiency of assets to meet my liabilities.
6. That I have not been paid invoices totaling over $35,000, submitted to NID Housing Counseling Agency (NID-HCA) for Right Party Contacts, Counseling Sessions, and Packages Completed pursuant to the NID-HCA Freddie Mac Project Agreement with Certified Branch Office Managers (CBOM) agreement.

7. That I did not misappropriate funds in violation of the NID-HCA CBOM agreement.
8. That as an independent contractor, I paid my employees, the rent, all of the overhead for the office, utilities, marketing and transportation which was required to run the office.
9. That I did not lock out NID-HCA clients from receiving housing counseling services in fact Mr. Carlisle met with the staff of the Detroit BHC office regarding outstanding invoices. He did not pay the outstanding invoices. He was fully aware that without payment the office would be bankrupted. Therefore he constructively closed the office.

/s/ ____________________
Jamara McNeil-Simpson

Sworn before me and subscribed in my presence this 12th day of August, 2016.

YVONNE WALLER-JORDAN
Notary Public, State of Michigan
County of Wayne
My Commission Expires May. 20, 2017
Acting in the County of Oakland

/s/ Yvonne Waller-Jordan
Notary Public

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

**In re:**
**JAMARA Y. McNEIL-SIMPSON** **CASE NO: 15-56285**
**CHAPTER: 7**
**JUDGE: TUCKER**

**_Debtor(s)_______________ ___/**

**Daniel M. McDermott,**
**United States Trustee/Plaintiff,**
**v.** **Adv Proc. No. 16-04256**
**JAMARA Y. McNEIL-SIMPSON**

**Debtor/Defendant**
**_____________________________/**

## CERTIFICATE OF SERVICE

I hereby certify that on **August 12, 2016**, a copy of Debtor/Defendant's Motion for Summary Judgment, to Dismiss and to Strike Adversary Proceeding Pursuant to Fed. R. Bankr. P 7012 and 7056, Notice of Motion for Summary Judgment, to Dismiss and to Strike Adversary Proceeding Pursuant to Fed. R. Bankr. P 7012 and 7056 and Certificate of Service upon:

Sean M. Cowley
Office of the U.S. Trustee
211 West Fort St – Suite 700
Detroit, MI 48226

was served electronically or by regular United States mail to all interested parties, and the United States Trustee.

**/s/ Deanna P. Waller-Bundy**
**Deanna P. Waller-Bundy P73566**
**Bundy Legal Services**
**PO Box 721113**
**Berkley, MI 48072**
**248-875-7720Fax:877-757-1545**
**deannabundy@yahoo.com**